Substance. I'll start the motion please. Thank you Your Honor, anything you please report. This is an appeal from a summary judgment in infirmity based on the on sale law. What I would like to focus on are the different proofs and the different standards required when an allegation is made based on printed publication versus prior public sale or use. I'm not too confused in combining three or four provisions. It seems to me, if you tell me where I'm wrong, that there are advertisements here which indicate that materials for the purpose stated in the claim, with the components stated, were on sale. Why doesn't that create a limitation bar which wasn't refuted? First of all, Your Honor, I think that there was a refutation to the extent of fact questions. But there are two different types of alleged invalidating activities here that do need to be looked at under their proper standards. One of them is printed publication. I'm asking about on sale. Why wasn't it on sale? First of all, Your Honor, the only alleged proofs of the on sale are the advertisements. They speak for themselves. They do. They speak for composition. They speak on sale at fine stores and gyms. That's broad catalog. And why doesn't that create a limitation case? There was no, correct me if I'm wrong, but there was no refutation saying, well, our product doesn't pertain to these, the ad doesn't pertain to the agreements that are on this patent. The purpose isn't the same. It seems to me that the ad has to be confirmed. And again, Your Honor, I'm sorry to keep coming back to the same point. But we do need to look at the ad's value as printed publications. So again, you get into another group. And then also the on sale aspect, which I will address. The question for on sale, and here's where I think that this report went into error, by citing cases that say the challenger does not need to prove enablement of an on sale. What the challenger certainly needs to prove is that all elements of the product or the method are found in the product that was allegedly sold or used in the public more than one year beforehand. The ads by themselves don't do that. Don't you have a slide in the ad of keto acid and an amino acid that is divasive? Absolutely. But that doesn't prove what was in any product that was actually on the shelf more than a year before the filing date and actually used. And maybe I can try to illustrate with an example. I understand what you're saying. You're sort of imposing the hearsay. You're saying that this is the only thing on the record and it can't have been used for the truth of the matter asserted. So we can't draw conclusions with respect to the actual product on sale based simply on these advertisements. In large part, absolutely, Your Honor. And again, this is summary judgment. We're not here talking about whether at the end of the day the defendants might be able to prove this up. But somebody who is trying to establish an on-sale bar in the ordinary course will get discovery of what is the product, what are its characteristics, was it actually in the bottle, or was it not? And that cannot be saved simply by a statement in an advertisement. And the hypothetical that I was thinking of, the circumstance that I think illustrates the point, is if we have a printed publication that discloses a compound, it's drawn, it's shown, but it doesn't show how to make it, and it is in fact extraordinarily difficult to synthesize the compound. But that relates to printed publication? Yes. But then the next point I'm going to suggest, Your Honor, so that relates to printed publication. If that reference, dissertation, whatever, says we made the compound and experimented with it in liabilities, that is an insufficient proof of public use. That does not show that once again you're getting off on sale into public use. I agree public use raises different considerations, just as printed publication requires a label. I'm talking about a premeditation case. It would be the same point, Your Honor, if that reference were to say, and in fact, we sold five slippers of this. And that's the only proof of it. There was no direct proof of what was sold, whether the compound was shown on the page. It gets to the sale, as opposed to the concept. It gets to the identity aspect, Your Honor. It gets to the issue of is there proof that what was supposedly in the bottle that was sold, used, shipped, really doesn't matter, actually is read on by the claims and is in anticipation. And that's not something that you can excuse proof of by saying that an on-sale bar doesn't have to be enabled. What I believe that gets to is a situation that if there's a compound that's been sold, used, offered for sale, any combination of one or the other of those, and that compound is extraordinarily difficult to synthesize. It requires a trade secret to synthesize it. The fact that manufacture of that compound is not enabled by the material in the jar does not prevent the anticipation. But somebody who's relying on that material in the jar to prove invalidity has to establish a date that they have to establish that what is claimed is actually in the jar, or in the case of a method claim, that what was claimed was either actually practiced or cases talk about an automatic and necessary result. And that's not something that's excused by saying I don't need to prove enablement of an on-sale bar. I do not have a proven case to support that position on on-sale. What I do have, Your Honor, are the circumstances of the cases that talk about the excuse of proving enablement for on-sale and what that means. I don't think there's any exact case that addresses the question of or. Obviously, it's the obvious. There's no case that exactly addresses can these AF5 cells prove on-sale immediately. Or are they only hearsay? Well, I believe they are only hearsay. There's no case on that. Is this a case of first impression on on-sale with respect to an ad that describes the composition and says it's on sale and tells you where to get it? It might be in that I have not found one that is exactly on point. But when we look at cases, so there's the case involving the material ribosyl, which was 3M, where there's the loctite case that involves the devices to attach layers of masonry. In all those cases, the court, whether it looks at all the evidence and asks, is the evidence sufficient to prove a non-sale type activity more than one year before the final date? And we know from a lot of cases that that is frequently held to a very high standard of proof. If it's an alleged public use or sale by someone other than the patentee, it's very often held to a corroboration requirement. This is not an easy way, as an evidentiary matter, to prove invalidity of a patent. Before you run out of time, I just want to ask you about critical publication. Is there specific information people identified was actually missing from the advertisements to include in it? This gets to, well, there's two issues. I'll answer yours in a moment. One is, in fact, does it disclose all limitations within the force corners, which is, does it match the enhanced muscle performance or recovery from fatigue as construed by the district court? But as to the enablement question, again, there's no claim that's made by plaintiffs here that any and all products that contain the recited ingredients, in any amount, in any dosage, in any use, will automatically result in the practice of the claimed method. The whole infringement case here was taught with intention. Well, so your answer, just because we're limited in time, your answer is the absence of particular concentrations identified in the advertisement is essentially the point. I guess the reason I'm having trouble with that answer is that I don't see anything in the claim and the specification where at least near the claim limits the injection of a particular concentration. And that, Your Honor, is why I was starting to say that we've never claimed or alleged that. Right. So you can't use the absence of such a provision as the advertisement as a means of saying it's not enabled when the claim itself doesn't. No, no. I think, in fact, Your Honor, the opposite. The claim does not need to enable, obviously. The specification needs to enable. Right. The claim is practice in carrying out the claimed method. A highly contested point before the summary judgment was granted was whether we had sufficient proof that the defendant's products actually did that. They denied it. They denied that their products, even though they contained the recited amino acids and keto acids, actually resulted in the claimed method. And so the claimed method clearly requires on the face of it that it be carried out, that it be practiced, that the results are correct. This gets to the issue of is the preemptive claim limitation. And it is. Use of these compounds is in the prior art all over the face of the patent. And in other situations, in medical situations, liver failure, et cetera. So there's no question that the claim is limited to practice of the claimed method, making that happen in person. And we can't infer from the advertisement that they didn't necessarily affect the affected muscles, the absence of muscle fatigue?  And we can't infer. If we look at the specification here, for example, which is the double-blind study that was published and it's recited in the specification, they gave 11 grams of this combination to the testers. That's quite a lot. Now, there's no proof that there were 11 grams of that material in these prior art products. And it's certainly not disclosed on the face of the publication, on the advertisement. So if they were reciting on the face of these materials 11 grams of this combination, I'd have a problem. And it would be a difficult question to answer about, would we not infer? Because they're using the same materials in the same amount. They're in your spec. They don't necessarily result. But that's not the facts here. I'm not sure you hear me well. Yes, sure. Thank you. Yes, your honor. I'm Phillip Sigrist representing the Appalachian BSN. Mr. Latham represents MRI. I think we're divided into 10 minutes and five minutes. I wanted to touch first on claim A, the claim with the conjugated limitation in it. And then come back to some of these issues we were just talking about. I'd like to hear what you have to say about the hearsay point. Yes, your honor. On the hearsay point, the point is that these ads were published before the patent was filed. Everything that's in the claims is in these ads. But are they hearsay? No, but come on. They're intending to prove, namely, that the product within the scope of the claim was on sale. Let me answer first whether they're hearsay about a previous publication, and then I'll answer whether they're hearsay about on sale, if I may. First, they have, as you pointed out, all the elements of the claim. They have these exact chemical compounds. They say to take the compounds. They say that it makes you stronger. They say that it improves recuperation, that it improves recovery after exercise. Because the advertisement meets all the elements of the claim itself, then the advertisement is not hearsay. It's not saying that this thing was done somewhere else. It's itself telling you exactly what's later claimed. Do you assign printed publications stronger as an invalidating ground than on sale? Oh, I'm not necessarily choosing which one is stronger. I'm just answering that first, because that's what I already had in mind. Do you think the concentration, just to finish that point, the concentrations disclosed here with respect to printed publications are sufficient for enabling purposes? Yes, Your Honor, and the point... What other point did the opposing counsel make? The opposing counsel's point had a lot to do with hypothetical situations where you've got to make a new chemical compound or you've got some trade secret being practiced and you can't tell what's going on from the publication. That's not the case here. This is not some complicated trade secret. It's not a new compound that nobody knew how to synthesize. All you had to do, the only step in this method is you administered this composition. Exactly that composition is given and it was administered. Now, back to your point about what has to be... I'm going to go back to Judge Lawrence's point. He asked the first question and that was with respect to the hearsay regarding on-sale. Right, I do want to answer hearsay about on-sales and I wanted to come back to the question about enablement and what's claimed here. On the on-sale bar, I think the key to understanding that is what you already said. Did we make a time efficient case? There would be lots of ways to prove something was on sale. You can put in lots of different evidence, but the amount of evidence you put in of whether something was on sale is different from the fact of whether or not it was on sale. We could bring in somebody to testify. Yes, I went into a store and I laid down this money and I got this back and I took the product myself. That's a sale. That would be an actual sale. Or... And since you have a product here, we rely exclusively on this advertisement and don't cross the line towards an admissible hearsay. We're having to identify sort of the truth of the existence of this product and characterize it the way it's characterized. No, Your Honor, because it's not... It's really not hearsay. The advertisement is saying that this is on sale and it is circumstantial evidence of sale. Not all circumstantial evidence is hearsay. We're not really offering it for the truth of the matters asserted. What we're offering is saying, look, there are two other people who were out there, and there are actually more than that, there are several others who were out there before the priority date of this application saying, here, take this that's got the same composition and it'll make you stronger and it'll improve your recovery. They're saying it's a fact that it's an on-sale product because it says it's on sale. Your Honor... Irrespective of whether they could deliver, irrespective of whether it was in the stores... No, Your Honor, I'm not going that far. It was circumstantial evidence, and circumstantial evidence is sufficient, but could have been rebutted. If this were not a real product, if they had come in with any evidence saying that, well, yeah, that was advertised, but they were never able to ship, this was never out there, then that would have rebutted our crime of facial case and summary judgment would have been improper, and that would have raised the question of fact. They didn't come in with that evidence. All they came in with was evidence saying, you know, sometimes advertisements aren't true. Sometimes people make claims in advertisements that they can't back up. Well, that does not create a genuine issue of material fact. That doesn't rebut our evidence that, well, this product was out there. These advertisements are evidence. They make it more likely that the product was on sale. They're relevant to that point. Maybe they couldn't have rebutted it. Maybe theoretically there might have been evidence that somebody could have come forward with to rebut it, but they didn't. And part of the reason they didn't is because it really was on sale. There wasn't any evidence that they could come up with. If they had developed that evidence, then it would have just shown that, yes, it actually was. In other words, they could have rebutted it if they had gone to a GNC or one of those stores and found a good get. If they'd gone to one of those stores, if they'd gone to the people selling it and done a 30 v. 6 competition, and they said, no, we put out these advertisements, but we just weren't able to do it, yes. That kind of evidence would have raised a genuine issue of material fact. That kind of evidence is not present in this case. So yes, you could sometimes overcome this. It's not that you're automatically going to win just because you have an advertisement. But when the advertisement is the only actual evidence, and the advertisement is unrebutted as this was. What about the fact that the advertisement was not the patentee's advertisement? It was the third class. I think that makes it stronger. If it were the patentee's advertisement, then it might be a question of whether they had put in there. If it were the patentee's advertisement, then they could come in with evidence about whether it was on sale or not on sale. But here, the suggestion is, well, maybe these guys were just making this up. Maybe they weren't really doing that. That really begs the question, though, of what it is these people invented. What was claimed here? What they claimed is that if you combine these two chemicals in a composition and you take that, it'll help you in your bodybuilding. It'll make you stronger and lead in recovery. What if someone puts out in the air, six months in advance, the availability of the product? Is that an on-sale product? No, it wouldn't be. If somebody could prove that it was six months in advance or if that was shown in the product, that's not the case here. If it was on its face, if it said, available in six months, on its face, that wouldn't be the case. Yes, that would mean that it's on sale in six months. And here, we know that's not the case because we've got the coupon that has an expiration date on the coupon, which is earlier than that. So we know it was already out there on sale. I do, but I'm trying to transition to that with this idea of what it was that they claimed here. If these advertisers were making up this claim, if they really weren't able to do all of this, how could they have known to tell that lie? The only thing that's claimed here is that if you administer this combination, it makes you stronger and it aids your recovery. How would the advertisers have known to claim that before it had even been invented? Do you maintain that an on-sale bar enablement isn't necessary, as it would be for a printed publication? Your Honor, there might be circumstances. If it's on sale. There might be circumstances where something that was on sale was not enabled, or if the claim has other limitations. There would be a reputation of it being on sale. I'm sorry, Your Honor? There would be a reputation of it being on sale. It really would be. That would prove that the invention wasn't on sale and something else was on sale. Now here, the critical point on enablement, I think, is understanding this preamble language. And I've only got a minute and a half left. Let's just assume that it is a limitation. That's not really a question here. Because the point is that they didn't include the specific ratios, the percentages, whatever else they may now want to suggest was required in the claim. If that was their invention, if some particular ratio or percentage was their invention, if that's what's required in order to make this stuff work, then the claim has to lay that out. You can't claim that sort of thing implicitly using functional language. That's not proper claim drafting practice. The fact that they put this statement in the preamble was an admission by the patentee that this is not the key to the invention. This is not critical to the invention. The point is that this isn't suitable for summary judgment. There were points made that refuted the claim of being on sale. And that's a negative product. Yes, Your Honor, that's what they said. Yeah, and what's your? There was no reputation that it was on sale. You know, you've got a statement from the expert that. Reputation that what was being offered might not have the components of the claim. There was absolutely no evidence that it didn't have what's listed there. There's no reason to believe that it didn't have what's listed there. What are we saying has to happen here? Do we have to bring in a jury and say, and present this evidence to them? If you gave this evidence to a jury, there's no other conclusion anybody could reach but that it was on sale because there is no contrary evidence. They didn't meet their burden in responding to summary judgment to introduce any contrary evidence. And really the reason they didn't, it's not for a collection of accountants because there was no contrary evidence. You really couldn't refute that because even though the evidence may be circumstantial, that's all you had. Did I answer your question about enablement? Thank you, Your Honor. May it please the court. My name is Robert Latham and I represent the Medical Research Institute. I'd like to address Judge Lori's question about the on-sale bar, make a few comments about the hearsay issue, and then address enablement briefly. To answer Judge Lori's question, the offer for sale does not implicate that there is no contrary evidence. It does not implicate hearsay objection. It is a verbal act that cannot go with truth, a matter of certainty. For instance, the ads are not being offered for the truth of the fact that a bodybuilder, Lou Ferrigno, thinks he has the greatest products that ever existed. They are being offered to show that they were on sale. You have other edition of that, the coupon, the price, where you can get it. So it really doesn't implicate hearsay at all. Does it implicate what was actually on sale? Do we have to accept as true the content of the advertisement? Well, it's certainly a prima facie case that what is on sale. And as I said, it's not hearsay. Even if it were hearsay, the only, it wasn't really by way of objection, but the only issue that was raised by Iowa in the court below was on page 1751 and 1752 of the record in response to BSN's motion for summary judgment. And all they raised an issue with was some of the testimonials in the prior art ads. Two of four testimonials in the Twin Labs ad and only four of 22 testimonials in the Weed of Professional Product ad. So there was no hearsay objection, no hearsay issue raised by anything else. That didn't relate to the motion for summary judgment. That was related to Edward Editors' trial. So that was later. But again, the offer for sale, and I think Judge Lurie had the distinction between what was on sale and what was sold. For on sale, the hearsay implication is not implicated. And as counsel for BSN said, this is a prima facie case that these are on sale. There was no evidence offered to rebut the fact that they were on sale. They had all the edition be on sale. They were intended to be bound. You had the coupon you could take. If they wanted to test that, they could try to show that the coupon wasn't used. And there was actually no counter evidence to that whatsoever. So we think the on sale bar is a very, very compelling ground for summary judgment. And the on sale bar doesn't implicate the enablement issue at all. The lower court cited the Zenith case for that proposition. I'd like to move on to enablement. And Judge Proh's question about the issue of does the fact that the ads didn't have any specific mix of ingredients or specific ratios, whether that in any way implicates the enablement issue. And my answer to that would be that it does not. Because the patent itself at column 8 lines 54 to 61 says that effective dosage ratios and concentration components can all be readily ascertained by a person of skill in the art. So there is no requirement that there be a specific dosage, a specific combination of components. I do want to address one thing that they have talked about, which is an affidavit from our expert, Dr. Wolf, who talked about one of skill in the art not being able to, that there be undue experimentation required for one of skill in the art to try to test all of the combinations that might result from all of the keto acids and all of the amino acids that come within the scope of the patent. And I think they've treated Dr. Wolf's declaration in a very misleading way, because they've taken that statement and made it appear that a person of skill in the art couldn't take an isolated set of ingredients that has these amino acids and these keto acids and practice the invention. What Dr. Wolf said is you have to have 100 amino acids, you've got 1,000 keto acids, and in combination it would take undue experimentation to enable a patent by having to test all of them. Now, there are a lot of claims here, deep-ended claims regarding specific compounds. Right. The court purported to treat them all, applying the claims to the ads. Was that all done correctly in your view? Yes, it was. In fact, there's absolutely no dispute that the other claims that add a certain ingredient, that those ingredients were found in those ads. I have one more question. There were two patents here. Yes. And the judgment was denied in the other patent. What happened to that? It's been dismissed, the issue. With regard to MRI, it's been dismissed. So the 199 patent is not an issue in this view. So my time's up. Thank you. Thank you. Thank you. On the issue of hearsay, counsel for MRI made a statement to the effect they're not offering the actual truth of what was in the bottle. But that is, in fact, exactly what they're being offered. And this is not a publication in Science or Nature or PNAS where an author reports, I bought compounds X out of the Sigma catalog. That would be very good evidence. That would be a sale. Yes. Well, correct. Or even if Sigma donated it to me. But that would be very good evidence of what was in a bottle in public use or on sale or offered for sale. That is not the facts that we have here. Counselor, if we don't agree with you on this point, do any of your claims survive because the claims and the ads don't match with respect to the specific? There's one claim, which is plan A, which calls for conjugation, which has to be looked at separately. And again, it gets to the question of what was proven. The ads refer to morphine alpha ketoglutarate. That is a conjugate when it's named. But again, that is not proof that what was in a bottle was a conjugate and not a mixture. There was, and I want to briefly address, there's been a lot of discussion of a prima facie case, but that's not really what this is about. This is proving invalidity by clear and convincing evidence beyond any genuine question of material fact. And if a challenger is relied on for a judgment, is this summary judgment suitable if there's a prima facie case that isn't reviewed? It depends what Your Honor means by prima facie case. I would say it's a case that you could put it in front of the jury and win on. And that's not what we have here. If I'm trying to prove up invalidity by a third party activity, I better go get discovery from that third party activity. I've spent a lot of time in my career trying to do that. It's not the patentee's obligation to seek out the third party and disprove an allegation by the challenger that that activity occurred. My time is up. Thank you, Your Honor. Thank you.